CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



December 23, 2019

Arjun K. Murahari, Esq.
Mignini, Raab & Demuth, LLP
606 Baltimore Ave., Suite 100
Towson, MD 21204

Stacey W. Harris, Esq.
Special Assistant United States Attorney
Social Security Administration,
Office of General Counsel
6401 Security Blvd.
Baltimore, MD 21235

Subject: *Jacobi P. v. Saul*
Civil No.: 8:18-cv-02531-GLS

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 13, 14). A court must uphold the Social Security Administration's ("SSA" or "the Agency") decision if it supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3)(2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Chater*, 76 F.3d at 589. A court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. (*Id.*). Upon review of the pleadings and the record, this Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the judgment of the SSA is **AFFIRMED**.

I. BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits and Title XVI application for Supplemental Security Income Benefits on May 20, 2014, alleging a disability onset date of November 1, 2013. (Tr. 15). The SSA denied Plaintiff's application initially on October 24, 2014 and upon reconsideration, denied it again on April 5, 2015. (*Id.*). The Administrative Law Judge ("ALJ") granted Plaintiff's request for a hearing and conducted it on July 10, 2017. (*Id.*). On September 13, 2017, the ALJ issued a decision finding the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 15-23). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-5).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

In deciding to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation process regarding disability set forth in 20 C.F.R. § 416.920. *See also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ were as follows: step one, assess whether Plaintiff engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether Plaintiff's impairments met the severity and durations requirements found in the regulations; step three, ascertain whether Plaintiff's medical impairment met or equaled an impairment listed in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. ("the Listings"); step four, analyze whether Plaintiff could perform her past work, given the limitations caused by her impairments; and at step five, analyze whether Plaintiff could perform any work. (Tr. 31-40). Because the first three steps did not yield a conclusive determination, the ALJ also assessed Plaintiff's Residual Functional Capacity ("RFC")—i.e., the "most the claimant 'c[ould] still do despite, physical and mental limitations that affect[ed] her ability to work"—by considering all of Plaintiff's medically determinable impairments, regardless of their severity. *See Mascio*, at 635 (quoting 20 C.F.R. § 416.945(a)(1)). Per *Mascio*, Plaintiff bore the burden of proof through the first four steps of the sequential evaluation process. 780 F.3d at 636. Upon making the requisite showing, the burden shifted to the Agency at step five to prove that Plaintiff could perform other work that "exist[ed] in significant numbers in the national economy," in light of her "[RFC], age, education and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments beginning on November 1, 2013: history of a right ankle fracture, left tibia fracture, obesity, and tobacco dependence syndrome. (Tr. 17). Recognizing those severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant is able to perform lifting, carrying, pushing, and pulling of 20 pounds occasionally and 10 pounds frequently. The claimant can stand one hour and walk one hour during an eight-hour workday with unlimited sitting and with normal breaks. The claimant can occasionally climb ramps and stairs, balance, stoop, must avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and hazards of wet, slippery surfaces and unprotected heights. The claimant can occasionally push and pull with his bilateral lower extremities and needs a cane for ambulation. And, due to alleged side effects from his pain medications, the claimant is limited to low stress work, defined as having only occasional decision making required and only occasional changes in the work setting. (Tr. 18).

At the hearing, a vocational expert ("VE") testified about whether a hypothetical person with the same limitations as the Plaintiff could perform Plaintiff's prior work as a telephone technician and a fast food worker. (Tr. 61). The VE testified that the hypothetical person could not perform Plaintiff's prior work but could perform other work existing in significant numbers in the national economy, e.g., addressing clerk, document preparer, and a call out operator. (Tr. 62).

Therefore, the ALJ found that the Plaintiff was not disabled. (Tr. 23).

## III. DISCUSSION

On appeal to this Court, Plaintiff asserts that the ALJ failed to provide a sufficient explanation of her step three assessment of Plaintiff's ability to ambulate effectively. Specifically, Plaintiff contends that the "ALJ failed to resolve discrepancies between her findings and the medical evidence pertaining to Plaintiff's inability to ambulate effectively as defined in *See* 20 C.F.R. Part 404, Subpart P, App. 1§1.00B2b." (ECF No. 22, pp. 7-12). Plaintiff bears the burden of showing whether his impairment meets all of the criteria listed under Listing 1.02. *See* 20 C.F.R. Part 404, Subpart P, App. 1§1.00B2b. Consequently, Plaintiff must show that the impairment "lasted or [was] expected to last for a continuous period of at least twelve months." 20 C.F.R. § 404.1509. In order to meet Listing 1.02 criteria, Plaintiff is required to demonstrate the following: (1) he suffers from a major dysfunction of a joint[1]; and he meets the criteria of either sub-section A or sub-section B of Listing 1.02. *See* 20 C.F.R. Part 404, Subpart P, App. 1§1.00B2b.

In order to prevail on a Listing 1.02 A argument, Plaintiff must demonstrate that his fractures caused an inability for him to ambulate effectively. *Vogel v. Co Comm'r, Social Sec. Admin*., No. GLR-13-911, 2014 WL 722105, at *2 (D. Md. February 24, 2014). The Social Security Administration has defined an "inability to ambulate effectively" as being "an extreme limitation of the ability to walk; i.e., an impairment(s) (sic) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §10013.2.b.(1). In addition, in this jurisdiction, an ALJ's summary conclusion that a Plaintiff fails to meet a Listing is insufficient; rather, the ALJ must provide a sufficient explanation so that meaningful judicial review of the analysis and determination can be made. *Cook v. Heckler*, 783 F.2d. 1168, 1172-73 (4th Cir. 1981).

Here, I do not find that the ALJ adequately explained her basis for finding that Plaintiff did not meet Listing 1.02A. Indeed, in her step 3 analysis, the ALJ simply made a summary statement that Plaintiff did not meet the listing "because his impairments have not resulted in an inability to ambulate effectively or an inability to perform fine and gross movements." (Tr. 18). Pursuant to *Cook*, this is insufficient.

However, ultimately, I find that substantial evidence exists to support the ALJ's finding that Plaintiff did not demonstrate an inability to ambulate effectively. The ALJ's step-four analysis clearly demonstrates that she considered the record and found that the Plaintiff could ambulate effectively.

A review of the record reveals that Plaintiff suffered from two injuries, which resulted from being struck by a car. (Tr. 418-649). In 2013, Plaintiff underwent surgery for his left tibia fracture

---

[1] Major dysfunction of a joint is "characterized by gross anatomical deformity… chronic joint pain and signs of limitation of motion or other abnormal motion of the affected joint9s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint." *Vogel v. Co Comm'r, Social Sec. Admin*., No. GLR-13-911, 2014 WL 722105, at *2(D. Md. February 24, 2014

and right fibula fracture. (Tr.418). On December 5, 2013, the treatment records reflect that after Plaintiff's surgery he used a walker in order to ambulate; however, on December 18, 2013, he was instructed to bear weight using a brace and a crutch, and to begin physical therapy. (Tr. 418-421). Plaintiff used the walker once after surgery, but it was never indicated that the use of the walker would be permanent. (Tr. 418). In addition, Plaintiff never used or needed to use two canes in order to effectively ambulate. Even though Plaintiff used a cane to ambulate, he testified that his orthopedist never prescribed a cane. (Tr. 48). In fact, Plaintiff's orthopedist preferred Plaintiff to bear more weight and wanted him to stop using the cane. (Tr. 48). In January 2014 Plaintiff continued to experience swelling and pain in both his right ankle and left leg and stated that he could not begin physical therapy until his pain was controlled. (Tr.442). Even though in April 2014 Plaintiff still had a painful gait, Dr. Blundon allowed Plaintiff to fully bear weight while ambulating, and also prescribed physical therapy. Plaintiff was also told to discontinue the use of his brace. (Tr. 423). In 2015, Dr. Montemayor opined that Plaintiff "can be expected to walk for at least 60 minutes at a time before needing a break, and at least 2-3 hours total in an 8-hour workday due to his [pain]." (Tr. 474). In addition, she opined that Plaintiff does not need an assistive device to walk unless he is walking long distances or on uneven terrain. (Tr. 474). In June 2016, Plaintiff underwent another surgery to remove hardware from his left leg; as a result, Plaintiff was instructed to "use crutches for walking and continue with activities weight bearing as tolerated." (Tr. 550). By November 2016, Plaintiff's wounds from surgery healed, and he had good range of motion, stability, and there was no recommendation that he use an assistive device to walk. (Tr. 560, 562-565, 587). In February of 2017, Dr. Martin examined Plaintiff and noted that he was ambulating independently. (Tr. 599). Finally, in March of 2017, Dr. Martin opined that Plaintiff had "decreased ambulation tolerance;" however, Dr. Martin's treatment plan included methods for Plaintiff to increase his ambulation tolerance such as: therapeutic exercises; therapeutic activity; gait training; neuromuscular rehabilitation; manual therapy; group therapy; and patient education. (Tr. 648).

In *Vogel v. Co Comm'r, Social Sec. Admin*., 2014 WL 722105 at *2 (D. Md. February 24, 2014), the court held that evidence of some difficulty with ambulation does not translate to an extreme limitation on a claimant's ability to walk. Similar to the Plaintiff in this case, the claimant in *Vogel* underwent surgery on her lower extremity and suffered from pain, swelling, limited range of motion, and difficulty with ambulation. *Id*. The *Vogel* claimant, like Plaintiff, noted several similar examples of ineffective ambulation: (1) used a walker once; (2) a doctor recommended use of a brace to reduce pain in the leg; (3) continued to use a cane to ambulate due to pain and balance issues; and (4) walked with a limp. *Id.* at 1-2. Despite claimant's complaints, the *Vogel* court explained that claimant demonstrated some difficulty with ambulation, but it was not so severe as to prevent the claimant from performing routine ambulatory activities. *Id.* at 2. In our case, Plaintiff engaged in several ambulatory activities during the years at issue. For example, Plaintiff testified that he drove himself to the hearing with no problem. (Tr. 38). Plaintiff made appearances at his son's school when his son's teacher needed to speak with him. (Tr. 54). Plaintiff was able to bathe and dress himself even though it took him some time to do the same. (Tr. 55). Although Plaintiff did not cook his own meals, he was able to go to the grocery store on his own. (Tr.55). Also, Plaintiff performed the assigned physical therapy workouts while he was at home. (Tr. 55). In sum, on this record, I find that substantial evidence supports the ALJ's conclusion that the Plaintiff did

not have an extreme limitation of the ability to walk because he was able to do routine ambulatory activities. I find that the "ALJ's analysis at step four provided sufficient discussion of the medical evidence pertinent to [Listing 1.02]." *Keene v. Colvin,* CV ADC-16-0725, 2017 WL 980231, at *5 (D. Md. Mar. 10, 2017).

Plaintiff avers that Dr. Montemayor opined that the Plaintiff is required to use a cane to walk on uneven surfaces and the ALJ failed to consider Dr. Montemayor's finding in the context of evaluating Listing 1.02A.(ECF No. 22, p. 12). I disagree. It is true that Dr. Montemayor opined that Plaintiff "needs an assistive device, such as a cane, with regards to long distances and uneven terrain," however, the Court finds that the ALJ addressed the finding. The ALJ accorded Plaintiff's treating physician's opinion the greatest weight; Dr. Martin's opinion was consistent with sedentary work. (Tr. 21). Dr. Montemayor's opinion was accorded "some weight" and her opinion was consistent with the record. (Tr. 21). During the hearing, the ALJ asked the VE whether a hypothetical individual with Plaintiff's impairments could perform sedentary work if he needed a cane for ambulation. (Tr. 63). The VE answered in the affirmative. (Tr. 63). I note that the ALJ considered Plaintiff's injuries and subjective complaints of pain and ultimately limited him to sedentary work, which was more restrictive than the recommendations made by Dr. Montemayor and Dr. Martin. (Tr. 20).

In sum even though the ALJ provided a conclusory step three analysis, I find that, after reviewing the record in its entirety, the ALJ had substantial evidence to support her finding. Accordingly, remand is not warranted.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 22), is **DENIED** and Defendant's Motion for Summary Judgment, (ECF No. 28), is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is **AFFIRMED** for further proceedings consistent with this opinion. The clerk is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge